# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 9, 2002 Session

## CHRISTINA CLIBURN v. PAUL DAVID BERGERON

**Appeal from the Circuit Court for Rutherford County**
**No. 44638     J. Steve Daniel, Judge**

_____

**Nos. M2002-01386-COA-R3-CV - Filed December 31, 2002**
**M2001-03157-COA-R3-CV - Filed December 31, 2002**

_____

In this consolidated appeal, we are called upon to review the trial court's decisions on two separate but related petitions. In the action brought by the mother, the trial court dismissed for lack of jurisdiction a petition which sought to register and modify a 1997 foreign divorce decree granting custody and support, enforce a foreign decree of child support, and establish parentage of a second child not the subject of the previous orders. Because the trial court did not have jurisdiction to modify a foreign custody decree when another state had continuing exclusive jurisdiction and because there was no personal jurisdiction over the alleged father, a nonresident, we affirm the trial court's decisions. In the petition subsequently brought by the father to register and enforce a later modification by the foreign court granting custody to the father, the trial court granted the requested relief. We affirm that decision because any deficiencies in the father's petition were technicalities, and the trial court had the entire record of the foreign court's proceedings before it.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Affirmed and Remanded

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and W. MICHAEL MALOAN, SP. J., joined.

Gary N. Patton, Murfreesboro, Tennessee, for the appellant, Christina Cliburn.

John M. Green, Murfreesboro, Tennessee, for the appellee, Paul David Bergeron.

**OPINION**

This consolidated appeal[1] involves a factually and procedurally complicated custody and paternity dispute in which courts of both Tennessee and Louisiana are involved. There is a long history of litigation between Christina Cliburn ("Mother") and Paul David Bergeron ("Father") that spans at least five years and includes civil as well as criminal litigation. When Mother and Father were divorced in 1997 in Louisiana, they had one minor child, a son, G.B. Mother was awarded custody of G.B. as a result of the divorce decree and later orders, and Father was ordered to pay child support and alimony. The final divorce decree and other related orders addressed all issues then pending concerning child support and custody for G.B. Two months after the divorce decree was issued, however, a second child, a daughter, A.M.B., was born.

On September 16, 1997, Father filed a petition against Mother in Louisiana to disavow paternity of the second child. Mother was ordered by the Louisiana court to submit to blood testing, and to bring the child for testing, to determine the paternity of the second child. The blood testing has never taken place.

On April 14, 1998, the Louisiana trial court entered an order granting sole custody of G.B. to Mother. The order also provided for continuing review of visitation. On October 16, 1998, the Louisiana court issued an order granting Father visitation with G.B. every third weekend and ordering Mother to transport G.B. to the site where the exchange would take place.

The parties attempted to reconcile in 1999, but their attempts at reconciliation failed. Mother claims the failure was due to Father's physical violence and abusive behavior. Father refutes these claims of physical violence. Mother moved to Tennessee with both children in October of 1999, immediately after she had Father arrested for assault and battery.

On May 25, 2000, Father filed a petition in Louisiana to modify custody and support of G.B. He attempted to serve Mother with the petition numerous times, eventually employing a private process server to effectuate service. Service was finally made on July 18, 2001, after Mother sued Father, and he was served with process. Father then filed a motion for contempt and the Louisiana trial court issued a show cause order on July 21, 2000, commanding Mother to appear in Louisiana to respond to allegations of contempt.

On March 26, 2001, Mother filed a Petition in Rutherford County, Tennessee to enroll the foreign decree of divorce rendered in Louisiana, as modified by subsequent orders; to modify the visitation schedule set therein so as to allow only supervised visitation in Tennessee; for a judgment against Father for back child support and alimony on the basis of the divorce decree; and to establish the parentage of and support and visitation for A.M.B., attaching a Louisiana court order ordering paternity testing. Mother then filed a Motion for Default Judgment on May 25, 2001, which was set

---

[1]This court consolidated No. M2002-01386-COA-R3-CV and No. M2001-03157-COA-R3-CV *sua sponte* by order dated September 25, 2002. Christina Cliburn is the appellant in both cases involved herein.

to be heard on June 4, 2001. At that time, Father made a limited appearance to contest jurisdiction. The trial court issued an opinion letter on June 29, 2001, in which the court denied the Motion for Default Judgment and discussed the separate claims made by Mother and the statutory and jurisdictional requirements applicable to each. The opinion concluded, "Plaintiff [Mother] is to file an amended complaint that comports with the proper jurisdiction to address each of the three elements of their asserted claim."[2]

On July 19, 2001, the Louisiana court, with knowledge of the pending litigation in Tennessee, heard arguments from counsel and testimony from Father and Father's mother on Father's petition to modify custody and support of G.B. Counsel for Mother made a limited appearance and was then allowed to withdraw. According to the minutes from the Louisiana court, Mother was not present at the hearing. The Louisiana court awarded sole custody of G.B. to Father at that time. The Louisiana trial court's order stated that Father "is hereby granted sole custody of the minor child, . . . , consequently, the previous order for child support payments is hereby terminated, and the rights of [Mother] to seek visitation privileges with the minor child is specifically reserved."

On July 25, 2001, the Tennessee trial court entered an order consistent with the June 29 opinion letter. The court ordered that those portions of the petition related to the original Louisiana orders granting custody, support, and visitation of G.B. would be dismissed unless the petition was amended within thirty (30) days to clarify the issue of jurisdiction. The court continued the matter of paternity of the second child, A.M.B.[3]

On the same day, Mother filed an amended petition in the trial court per the trial court's instructions. The amended petition sought: (1) a temporary order of enforcement of the Louisiana April 1998 order awarding Mother sole custody, citing Tenn. Code Ann. 36-6-219, the provision regarding emergency custody jurisdiction; (2) enrollment and registration of that order; (3) modification of that order pursuant to Tenn. Code Ann. § 36-6-230 to provide supervised visitation with Father in the state of Tennessee; and (4) a determination of parentage of A.M.B. Mother argued that Tennessee had jurisdiction to modify visitation under Tenn. Code Ann § 36-6-216 because it was the home state and Louisiana did not have continuing exclusive jurisdiction because at the time Father commenced his action to modify custody Tennessee was the child's home state.

---

[2]One of the reasons for this order was that the documents filed by Mother earlier did not include a Louisiana order clearly granting sole custody to Mother. That deficiency was later remedied.

[3]Mother filed a notice of appeal in Tennessee on August 22, 2001, appealing the trial court's July 25, 2001 order. This court determined, in an order filed October 4, 2001, that Mother was not appealing a final order of the trial court and dismissed the appeal without prejudice. The order states that the record (No. M2001-02071-COA-R3-CV) would be consolidated with any subsequent appeal that may be filed.

Mother filed another Motion for Default Judgment on October 11, 2001, seeking the relief demanded in her original petition. On October 19, 2001,[4] after a hearing, the trial court entered an order stating:

The pleadings in this matter establish that the parties were divorced February 28, 1997 in the District Court, for the Parish of Pointe Coupee, Louisiana. [Father] was ordered to pay child support of $400.00 per month as a part of this court order for one minor child, [G.B]. Subsequent to this divorce a second child was born to [Mother] on April 1, 1997 whose name is [A.M.B.]. [Mother] asserted that [Father] is the father of this child and this issue is being considered in a pending Louisiana court proceeding which is entitled, Petition to Disavow Paternity. This action has been on file in Louisiana since September of 1997.

The pleading filed by [Mother] established that she moved to Tennessee in October of 1999. It appears from the documents filed that [A.M.B.] was born in Mississippi. None of the pleadings indicate that [Father] has ever resided in any state other than Louisiana since the divorce or that [A.M.B.] was conceived in Tennessee. In short, the pleadings of [Mother] establish no act or contact by [Father] to Tennessee. [Mother] seeks the jurisdiction of Tennessee based on the assertion that the two children, which are the subject of this controversy, have Tennessee as their home state at this time.

[Mother] sought three separate forms of relief when she filed the original petition. She sought to register the foreign judgment of Louisiana for enforcement, to modify the foreign judgment as to [Father's] visitation, child support, and to establish paternity and support for [A.M.B.].

This court previously entered an order requiring that an amended petition be filed to clarify the basis for [Mother's] requested relief or that her petition would be dismissed. Such an amended petition was filed on July 25th seeking then to register the foreign decree under the provisions of Tenn. Code Ann. § 36-6-229, but in addition thereto seeking to modify the visitation schedule of the Louisiana order, award of past due child support and alimony under the original decree of divorce, and the establishment of paternity of [A.M.B.].

This court, at this point in time, finds that it is appropriate to reserve judgment on the registry of the foreign judgment of Louisiana as to custody and support of [G.B.]. This matter is to be reserved pending a receipt of the final order dealing with the custody issue certified in accordance with state law to entitle the same to full faith and credit. In regards to [Mother's] request for modification of such foreign decree, this Court continues to be of the opinion that Tennessee lacks jurisdiction to modify

---

[4]The order was signed by the trial court on October 18, 2001, but was not entered until October 19, 2001.

the foreign decree either as to support or as to custody and visitation. This court has previously indicated that the case of *LeTellier v. LeTellier*, 40 S.W.3d 490 (Tenn. 2001) stands for the proposition that to modify a support award of a sister state, the provisions of Tenn. Code Ann. § 36-5-2611 must be explicitly met. Those conditions are not met by [Mother's] petition. In addition, the envisionment of the uniform codes envisions one court to maintain jurisdiction and cooperation with other courts across the country. The provisions of Tenn. Code Ann. § 36-6-218 set forth the requirements for jurisdiction to modify a foreign decree of child custody and visitation. These provisions basically mirror those of the provisions of Tenn. Code Ann. § 36-5-2611(1) . . . . This state does not have jurisdiction to modify those decrees . . . .

Next, [Mother] asserts jurisdiction for the State of Tennessee to determine paternity of [A.M.B.]. As to this particular claim, counsel for the respective parties have argued that Tenn. Code Ann. § 36-5-2204[5] should preclude Tennessee from exercising jurisdiction on this matter . . . . The jurisdiction of Tennessee courts to determine paternity where the putative father resides out of the state and is a non-resident, is embodied in Tenn. Code Ann. § 36-5-2201 . . . . this court concludes that the pleadings establish no basis of contact with the State of Tennessee by [Father] that would allow the state to exercise *in personam* jurisdiction over him . . . . Therefore, the paternity action . . . is hereby dismissed. Therefore, this court finds that the petition to register the foreign decree is to remain pending and is not dismissed at this time. This court awaits certification of the final judgment of custody from Louisiana. At that time the foreign decree is to be enrolled as to the custody as well as any support issues.

Mother then filed in the trial court a motion to alter or amend, and the court amended its October 19, 2001 order on December 17, 2001.[6] The modification struck the portion of the order regarding modification of child support by stating that Mother had not sought modification of child support, but rather an award for unpaid child support. The court further found that its October 19, 2001 order was the final ruling, pursuant to Tenn. R. Civ. P. 54.02, as to the issues raised in Mother's petition: (1) modification of the foreign judgment as to visitation; (2) award of judgment to Mother for unpaid alimony and support; and (3) establishment of paternity and support for A.M.B. Thus, the court reserved the issue of registration of the earlier orders of the Louisiana court.

---

[5]Tenn. Code Ann. § 36-5-2204 is part of the Uniform Interstate Family Support Act and applies to simultaneous proceedings in two or more states seeking to establish child support for a child.

[6]Mother filed a second notice of appeal with this court on November 14, 2001. Mother's second appeal is No. M2001-03157-COA-R3-CV. Subsequent to the filing of the notice of appeal, Mother filed a motion to consolidate the record in No. M2001-02071-COA-R3-CV (the appeal that was deemed premature by this court) with the record in No. M2001-03157-COA-R3-CV. This court granted that motion.

Meanwhile, on October 18, 2001, Father had filed an emergency motion for custody, and on November 14, 2001, Father had filed a request with the trial court in Tennessee for registration and enforcement of the July, 2001, order entered by the Louisiana court which granted him sole custody of G.B. Father gave notice of the filing of the judgment to Mother pursuant to Tenn. Code Ann. § 36-6-229(c). On December 6, 2001, Mother filed a request for a hearing, but did not set a hearing date. Father filed a notice of a hearing later in December, and set the hearing date as January 14, 2002.

On January 11, 2002, Mother filed a motion for a continuance due to the fact that she had suffered a miscarriage a few days prior to the hearing and her doctor advised that it would not be in her best interest to travel to the hearing as scheduled. The continuance was denied by the trial court. At the hearing, Mother filed an objection to the request for registration of the foreign judgment. On January 15, 2002, at the request of the trial court, Father filed certified copies of all of the pleadings from the Louisiana trial court.

On February 5, 2002, the trial court herein entered an order which dismissed Mother's petition to register and modify the original custody determination of Louisiana giving Mother custody,[7] and gave full faith and credit to the Louisiana decree of July 19, 2001, granting Father custody of G.B. The enforcement of the Louisiana judgment, however, was stayed pending the disposition of Mother's appeal of the Louisiana decision granting Father sole custody of G.B.[8] The trial court's order also dismissed Mother's petition to establish parentage of A.M.B. The order stated:

> This Court has concluded that the Louisiana court exercised continuing jurisdiction when it issued its order of July 19, 2001 based on the commencement of an action by [Father] May 25, 2000. Tennessee's version of the Uniform Child Custody Jurisdiction and Enforcement Act differs slightly from that of the Louisiana Act. However, both acts have superimposed upon them the Federal Parental Kidnapping Prevention Act, 28 U.S.C. 1738A. The Federal Parental Kidnaping Prevention Act appears to have as its primary purpose the prevention of a party fleeing from the rendering state court and seeking action in a sister state in an inconvenient forum to the parent deprived of his visitation or custody. 28 U.S.C. 1738(A)(d) as well as Tennessee's Uniform Child Custody Jurisdiction and Enforcement Act envision one and only one court hearing child custody matters. These statutes provide exclusive continuing jurisdiction to the original rendering court as long as a parent remains in that state and the general requirements of substantial connection jurisdiction exists as it does in this case. The official comments to Tenn. Code Ann. § 36-6-217 point out that the continuing initial jurisdiction court retains the exclusive jurisdiction so

---

[7]The dismissal of this petition is the subject of appeal No. M2001-03157-COA-R3-CV.

[8]Mother filed a motion for permission to appeal the July 19, 2001 Louisiana order on November 9, 2001. Mother's motion for appeal was granted by the Louisiana court on January 9, 2002.

long as "substantial connection jurisdiction" provisions are met. If the relationship between the child and the person remaining in the state with exclusive continuing jurisdiction becomes so "attenuated that the court could no longer find significant connections and substantial evidence, jurisdiction would no longer exist." These comments also point out that the original decree court is the sole determiner of whether jurisdiction continues or not. Under Tennessee's comments the trial court should look to the rendering court for their determination of whether they concede that they no longer have continuing jurisdiction. In this particular case Louisiana has answered that question by proceeding with the hearing of [Father's] petition after ultimately obtaining service of process on [Mother]. The Louisiana court had knowledge of the pending state of Tennessee action when it entered its order. This court defers to the Louisiana court as the certified record which this Court has received amply demonstrates that substantial connection jurisdiction exists. . . .

On March 7, 2002, Mother filed a motion to alter or amend/motion to make specific findings or, in the alternative, a motion for new trial. The trial court denied the motion on May 14, 2002.[9] Mother then filed a motion to alter or amend the order denying the original motion to alter or amend. The trial court denied this motion on July 15, 2002.

Mother timely filed an appeal from the trial court's decision to register and enforce the July 2001 order of the Louisiana court. On September 24, 2002, Father filed with this court a motion to dismiss Mother's appeal or, in the alternative, for consideration of post-judgment facts. Father's motion sought to have this court consider various occurrences, most of which were court filings.[10] This court denied the motion to dismiss, found that the post-judgment facts would not render the appeal moot as argued by Father, and reserved a ruling on the consideration of the post-judgment facts pending oral argument.

---

[9]Mother filed a notice of appeal on June 4, 2002, appealing the trial court's May 14, 2002 order. This appeal was designated as No. M2002-01386-COA-R3-CV. Father filed a motion with this court to consolidate appeal No. M2001-03157-COA-R3-CV (the dismissal of Mother's petition to register and modify the original Louisiana determination giving Mother custody) with appeal No. M2002-01386-R3-CV (the appeal of the trial court's order enforcing the Louisiana custody decision granting sole custody of G.B. to Father). Mother opposed consolidation and requested that this court stay the enforcement of the July 19, 2001 Louisiana judgment pending resolution of the appeal of the dismissal of her petition to register and modify the Louisiana determination giving her custody. At that time, this court declined to consolidate the appeals or stay enforcement of the Louisiana judgment. The appeals were later consolidated by this court. *See* n.1.

[10]Father sought to have this court consider: (1) a July 18, 2002 order from the Louisiana trial court dismissing Mother's appeal of the order granting custody of G.B. to Father; (2) a notice of filing of the Louisiana order granting custody of G.B. to Father in the Tennessee trial court; (3) an emergency temporary order of Mother to stay enforcement of the Louisiana custody order; (4) an order from this court denying Mother's motion for temporary stay; (5) a July 30, 2002 order from the Tennessee trial court ordering Mother to relinquish G.B. to Father; (6) an August 2, 2002 motion filed by Mother in the Tennessee trial court to alter or amend the order recognizing the foreign custody decree from Louisiana granting custody of G.B. to Father; (7) a September 4, 2002 order from the Tennessee trial court denying the motion to alter or amend; and (8) a felony arrest warrant for Mother on the grounds of custodial interference.

This court may consider post-judgment facts pursuant to Tenn. R. App. P. 14 when the facts are "capable of ready demonstration, affecting the positions of the parties or the subject matter of the action such as . . . other judgments or proceedings, . . . ." The Advisory Commission Comment to Tenn. R. App. P. 14 states that "although the appellate court should generally consider only those facts established at trial, it occasionally is necessary for the appellate court to be advised of matters arising after judgment. These facts, unrelated to the merits and not genuinely disputed, are necessary to keep the record up to date." We grant the motion to consider the post-judgment facts represented by the court filings with the exception of the felony arrest warrant, which we find to be irrelevant to our decision.

The following post-judgment events occurred. On July 18, 2002, the Louisiana court dismissed Mother's appeal of the decision granting Father sole custody of G.B. with prejudice. On July 22, 2002, pursuant to the Tennessee court's instructions, Father filed the order of the Louisiana court dismissing Mother's appeal in Tennessee. Mother then filed an emergency temporary order to stay enforcement of the foreign change of custody order in Tennessee on July 23, 2002, which was immediately denied by the trial court. Although this court had already denied a stay of the Louisiana order, Mother again sought a stay in this court to prevent the enforcement of the Louisiana order. This court denied the stay for the second time. On July 30, 2002, the Tennessee trial court entered an order commanding Mother to relinquish custody of G.B. to Father.

## I. Issues

Mother sought to register the original divorce decree, as modified, as a predicate for her request to modify the visitation provisions of the earlier orders regarding Father's visitation with G.B. She also sought to enforce the spousal support and the child support for G.B. provided in the Louisiana divorce decree and asked for a judgment for unpaid support. In addition, Mother sought to have the Tennessee court begin proceedings to establish paternity of and support for A.M.B. All of these matters were the subject of proceedings which had been initiated in Louisiana before Mother brought her petition in Tennessee. Father sought to register and enforce the custody order entered by the Louisiana court after Mother had initiated proceedings in Tennessee.

The jurisdictional issues involved in these requests are governed by several different sets of statutes. Therefore, we must, as the trial court did, examine each request in light of the statutory procedures and jurisdictional limitations applicable to each. The determinative question in all these issues is jurisdiction.

It is well settled that the proper construction of a statute is a question of law for the courts to decide. *Winter v. Smith*, 914 S.W.2d 527, 537 (Tenn. Ct. App. 1995) (citing *Roseman v. Roseman*, 890 S.W.2d 27, 29 (Tenn. 1994)). Consequently, the scope of review is *de novo* with no presumption of correctness as to the trial court's interpretation of the statute; findings of fact, however, are presumed correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d).

## II. Jurisdiction to Modify A Foreign Decree

We begin with the statutes relating to custody issues and, more particularly, interstate custody disputes. In 1980, Congress passed the Parental Kidnapping Prevention Act ("PKPA"), 28 U.S.C. § 1738A, which governs jurisdiction in child custody cases. Prior to 1997, all fifty states had adopted the Uniform Child Custody Jurisdiction Act ("UCCJA") with some variations to govern jurisdiction in child custody cases in state courts. *See* MATTHEW BENDER & CO., INC., MODERN CHILD CUSTODY PRACTICE § 3-10 (2002). However, the Uniform Child Custody Jurisdiction Enforcement Act ("UCCJEA") was created in 1997 by the National Conference of Commissioners on Uniform State Laws in order to clarify the ambiguities that existed in the UCCJA.

> In revising the UCCJA, the commissioners sought to modernize the original law and make it conform more closely with the PKPA. In addition, the commissioners created new procedures to assist in interstate enforcement of custody and visitation orders . . . .

*Id.*

At the time of the proceedings herein, the trial court's subject matter jurisdiction in such matters was governed by Tennessee's version of the UCCJEA.[11] Furthermore, a Tennessee court exercises jurisdiction consistently with the PKPA only when Tennessee has jurisdiction under both its own law and under the PKPA. *See* 28 U.S.C. § 1738A.

Specifically, the PKPA and the UCCJEA apply to all interstate "custody determinations." The PKPA defines a "custody determination" as "a judgment, decree, or other order of a court providing for the custody or visitation of a child, and includes permanent and temporary orders, and initial orders and modifications." 28 U.S.C. § 1738A(b)(3). Tenn. Code Ann. § 36-6-205, found in Tennessee's version of the UCCJEA, defines "custody determination" as:

> a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. "Child custody determination" includes a permanent, temporary, initial, and modification order. "Child custody determination" does not include an order relating to child support or other monetary obligation of an individual."

Thus, both the UCCJEA and the PKPA apply to Mother's request to modify the visitation arrangement established earlier by order of a Louisiana court.

The bases for jurisdiction may be found in the language of each act. Both the PKPA and the UCCJEA provide five separate bases of jurisdiction: (1) home state jurisdiction; (2) significant connection jurisdiction; (3) emergency jurisdiction; (4) jurisdiction when either a state with jurisdiction has declined to exercise it or when no other state would have jurisdiction under the

---

[11]The UCCJEA became effective in Tennessee on June 14, 1999, and replaced the UCCJA.

provisions of either law; and (5) continuing jurisdiction.  These bases are not co-equal, however, and in order to eliminate or reduce conflicting determinations by courts of different states, the UCCJEA and the PKPA provide direction as to which jurisidicational ground takes precedence.

> The UCCJEA establishes a clear jurisdictional hierarchy to decide which court will have power to decide child custody and visitation cases.  Like with the PKPA, at the top of the hierarchy is a court with exclusive continuing jurisdiction.  If a court has entered a valid custody order (or visitation order) and one of the parties or the child continues to live in the state, that court has the exclusive right to decide if the order should be permanently modified.  The court with exclusive continuing jurisdiction has what might be called "a right of first refusal."  Courts of other states may not modify an order (assuming a parent or child continues to live in the state that issued an order) unless the court that issued the order gives permission for another state to decide the issue.
>
> . . . .
>
> Under this hierarchy, the most preferred jurisdictional basis will be applied if it is available under the facts of the case, unless the court that has the preferred jurisdictional basis declines to exercise jurisdiction.  The order of preferred jurisdictional bases is: (1) continuing jurisdiction; (2) home state jurisdiction; (3) significant connection jurisdiction; (4) and jurisdiction when no other jurisdictional basis is available . . . .

MATTHEW BENDER & CO., INC., MODERN CHILD CUSTODY PRACTICE § 3-10 & -12.

Tennessee statutes, which incorporate the UCCJEA, follow this hierarchy.  The precedence given to the continuing, exclusive jurisdiction of a court which has made a custody determination is the result of a conscious decision to resolve ambiguities or omissions which had caused difficulties under the UCCJA and to make the UCCJEA consistent with the PKPA.  As the official comments to the UCCJEA, also adopted in Tennessee,[12] explain:

> This is a new section addressing continuing jurisdiction.  Continuing jurisdiction was not specifically addressed in the UCCJA.  Its absence cause considerable confusion, particularly because the PKPA, § 1738(d), requires other states to give full faith and credit to custody determinations made by the original decree state pursuant to the decree states' continuing jurisdiction so long as that state has jurisdiction under its own law and remains the residence of the child or any contestant.

---

[12]Tenn. Code Ann. § 36-6-203 provides that the official comments pertaining to one or more sections of the UCCJEA shall constitute evidence of the purposes and policies underlying those sections.

> This section provides the rules of continuing jurisdiction and borrows from UIFSA [Uniform Interstate Family Support Act] as well as recent UCCJA case law. The continuing jurisdiction of the original decree state is exclusive.

UCCJEA § 202, cmt. (1997) (accompanying Tenn. Code Ann. § 36-6-217).

Because this case involves a request to a Tennessee court to modify an order from another state, the relevant statutory provision is found at Tenn. Code Ann. § 36-6-218, which governs a Tennessee court's jurisdiction to modify foreign custody decrees. That provision states:

> Except as otherwise provided in § 36-6-219,[13] a court of this state **may not modify** a child-custody determination made by a court of another state **unless** a court of this state has jurisdiction to make an initial determination under § 36-6-216(1)(1) or (2), **and**;
>
> (1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under § 36-6-217 or that a court of this state would be a more convenient forum under § 36-6-221; **or**
>
> (2) A court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

(emphasis added).

Thus, the test used in order to determine whether a state may modify a foreign custody decree is two pronged. The first prong, or the prerequisite to further inquiry, is whether a Tennessee court has jurisdiction under Tenn. Code Ann. § 36-6-216. On appeal, Mother argues that Tenn. Code Ann. § 36-6-216 confers subject matter jurisdiction on Tennessee because Tennessee was the home state[14] of G.B. at the time she initiated proceedings in Tennessee; Louisiana was no longer the home state; neither the child, the child's parents, nor the child and one parent had a significant connection with Louisiana; and substantial evidence was no longer available in Louisiana concerning the child's care, protection, training and personal relationships.

---

[13]Tenn. Code Ann. § 36-6-219 outlines the procedure for temporary emergency jurisdiction in custody cases where a "child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse."

[14]"Home state" is defined in Tenn. Code Ann. § 36-6-205 as:

> the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding. . . .

Regardless of whether the Tennessee court had jurisdiction under Tenn. Code Ann. § 36-6-216, however, because Mother sought to modify an existing order from another state, the other requirements, or second prong, of the test set out in Tenn. Code Ann. § 36-6-218 must also be met. While that prong can be met by one of two alternatives, neither is present here. Subsection (2)'s requirement that the child and neither parent still live in the foreign state is clearly not met herein; Father continues to reside in Louisiana. Subsection (1) requires that the court of the other state, herein Louisiana, determine that it no longer has exclusive continuing jurisdiction[15] or that the Tennessee court would be a more convenient forum. The Louisiana court has made neither finding; to the contrary, it has retained jurisdiction over its original orders and has recently modified them, with knowledge of the proceedings in Tennessee.

Mother also argues that Louisiana lost its exclusive, continuing jurisdiction under that section of the UCCJEA that is codified at Tenn. Code Ann. § 36-6-217. However, that statute applies to the continuing jurisdiction of a Tennessee court to modify a custody determination that it had previously made. Under that provision, the Tennessee court making the original determination retains jurisdiction until a Tennessee court determines that neither the child nor the child and one parent have a significant connection with Tennessee and that substantial evidence relevant to the child's best interest is no longer available in Tennessee.[16] Tenn. Code Ann. § 36-6-217. Even if we were to apply that statute to the Louisiana court, it is clear that that court has not made the required determination.

In essence, Mother asked the trial court herein, a Tennessee court, to make the determination that Louisiana had lost its continuing, exclusive jurisdiction because there was not substantial connection to Louisiana. The statute Mother relies on does not provide for a court other than the one which issued the original custody order to make that determination. "The use of the phrase 'a court of this state' under subsection (a)(1) makes it clear that the original decree state is the sole determinant of whether jurisdiction continues. A party seeking to modify a custody determination must obtain an order from the original decree state stating that it no longer has jurisdiction." UCCJEA § 202, cmt. (1997) (accompanying Tenn. Code Ann. § 36-6-217).

Further, as explained above, the Tennessee court's jurisdiction herein is governed by Tenn. Code Ann. § 36-6-218, and that statute does not authorize a Tennessee court to determine that the court of another state no longer has continuing, exclusive jurisdiction. Under that statute's relevant portion, jurisdiction of the other state's court that made the original custody decision continues

_____

[15]The statute actually requires that the court of the other state determine it no longer has "exclusive, continuing jurisdiction under § 36-6-217." That statute provides that a court of this state has exclusive, continuing jurisdiction over its own child-custody determination until a court of this state determines that neither the child, nor the child and one parent have a significant connection to this state and substantial evidence relevant to the child's welfare is no longer available in this state or until the court of another state determines that the child and neither of its parents presently reside in this state.

[16]Alternatively, the original Tennessee court may lose jurisdiction if a Tennessee court or the court of another state determines that neither the child nor the parents live in Tennessee.

unless the court of the other state determines it no longer has exclusive, continuing jurisdiction under § 36-6-217 or that a court of this state would be a more convenient forum under § 36-6-221. Tenn. Code Ann. § 36-6-218(1).

The clear language of the statute prevents a Tennessee court from making the determination of whether the Louisiana court retained continuing, exclusive jurisdiction. The comments to the official text of the UCCJEA relevant to Tenn. Code Ann. § 36-6-218 reinforce the language of the statute itself and explain:

> This section complements . . . [Tenn. Code Ann. § 36-6-217] and is addressed to the court that is confronted with a proceeding to modify a custody determination of another state. It prohibits a court from modifying a custody determination made consistently with this act by a court in another state unless a court of that state determines that it no longer has exclusive, continuing jurisdiction. . . . The modification state is not authorized to determine that the original decree state has lost its jurisdiction. . . .

UCCJEA § 203, cmt. (1997).

As the trial court herein held, the Tennessee court must look to the rendering court, in this case Louisiana, for that court's determination of whether it has continuing, exclusive jurisdiction.

The Louisiana court has made no such determination. Father, still a resident of Louisiana, initiated proceedings in Louisiana seven months after Mother removed their son to Tennessee. Mother initiated the proceedings involved in this appeal before the Louisiana court ruled on Father's petition. The Louisiana court subsequently modified its earlier custody determination with the knowledge that there were proceedings ongoing in Tennessee when it awarded custody of G.B. to Father in July of 2001. As proof of Louisiana's knowledge of the Tennessee proceedings the record contains an "exception of lis pendens" filed by Mother in the Louisiana court asking for dismissal of Father's petition to modify custody filed in Louisiana due to the pending Tennessee action. The Louisiana trial court denied Mother's motion to dismiss Father's petition. The technical record from Louisiana was certified to the Tennessee trial court and shows that the same case number has been used throughout the litigation between Mother and Father from 1996 onward. Not only has the Louisiana court failed to find it does not have continuing jurisdiction, it has refused to do so.

The trial court herein applied the correct statute and analysis in determining whether it had jurisdiction to modify the prior Louisiana order. We affirm the decision of the trial court that it lacked jurisdiction to modify the child custody decree issued by Louisiana granting custody of G.B. to Mother because Louisiana has continuing exclusive jurisdiction.

II. Enforcement of Foreign Child Support Decree and Establishment of Parentage

In her petition to register and enforce the foreign custody decree, Mother asked the Tennessee trial court to award her a judgment for unpaid child support for G.B. and a judgment for unpaid alimony, both in accordance with the Louisiana decree awarding such support. She also asked the court to initiate proceedings to establish the parentage of A.M.B.

The UCCJEA does not apply to child support or parentage proceedings. Instead, Mother's attempts to enforce the child support and alimony obligations established by the Louisiana court and to establish the parentage of A.M.B. are governed by the Uniform Interstate Family Support Act ("UIFSA"), Tenn. Code Ann. § 36-5-2001 et. seq. The UIFSA applies to all proceedings that seek: "registration of an order for spousal support or child support of another state for enforcement" as well as "determination of parentage." Tenn. Code Ann. § 36-5-2301(a) (3) & (6).

The Uniform Interstate Family Support Act, in its section entitled "Proceedings Involving Two or More States," Tenn. Code Ann. §§ 36-5-2203 to -2206, provides the requirements for this state to exercise subject matter jurisdiction where Mother: (1) sought to enforce a support order entered by a court of another state; and (2) sought to establish paternity of and support for A.M.B. where similar proceedings had been begun in another state.

The applicable portions of the UIFSA are consistent with similar provisions of the UCCJEA in that they recognize the continuing, exclusive jurisdiction of the court which enters a child support order. *See* Tenn. Code Ann §§ 36-5-2205 & 2206. In particular, Tenn. Code Ann. § 36-5-2205(d) requires a court of Tennessee to "recognize the continuing, exclusive jurisdiction of a tribunal of another state which has issued a child-support order pursuant to parts 20-29 [Tenn. Code Ann. §§ 36-5-2001 to -2902] or a law similar to parts 20-29." Courts of this state may not modify an existing spousal support order issued by a court of another state having continuing, exclusive jurisdiction. Tenn. Code Ann. §§ 36-5-2205 (d). A Tennessee court may not modify a child support order from another state unless that state has lost its continuing, exclusive jurisdiction because neither parent nor the child still resides in that state or the parties consent in writing for another state to assume jurisdiction to modify. Tenn. Code Ann. § 36-5-2205; Tenn. Code Ann. § 36-5-2205 cmt.

However, as the trial court affirmed in its amendment to its October 18, 2001 order, Mother did not seek modification of the prior Louisiana court orders awarding child support and spousal support. Rather, she sought to enforce them. The original order of a court establishing child support remains valid and enforceable, and "That order is in effect not only in the issuing State and those States in which the order has been registered, but also may be registered and enforced in additional States . . . ." Tenn. Code Ann. § 36-5-2205 cmt. The procedure for registration and enforcement of foreign orders of support is found in Tenn. Code Ann. §§ 36-5-2601 to -2608. Such an order may be registered for enforcement by filing the order to be enforced with a court in this state. Tenn. Code

Ann. § 36-5-2603.[17] Registration in the responding state is the first step to enforcement by a court of that state.

> Registration should be employed if the purpose is enforcement. Although registration not accompanied by a request for affirmative relief is not prohibited, the Act does not contemplate registration as serving a purpose in itself.

Tenn. Code Ann. § 36-5-2601 cmt. While the trial court initially reserved judgment on the issue of registration of the previous support orders from Louisiana, it determined that it could not enforce those orders because it lacked personal jurisdiction over Father.

Father appeared specially below to contest the trial court's personal jurisdiction over him, and the trial court agreed that it did not have personal jurisdiction over him as required by the UIFSA, specifically Tenn. Code Ann. § 36-5-2201, which states:

> In a proceeding to establish, enforce, or modify a support order or to determine parentage, a tribunal of this state may exercise personal jurisdiction over a nonresident individual . . . if:
>
> (1) The individual is personally served with notice within this state;
> (2) The individual submits to the jurisdiction of this state by consent, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction;
> (3) The individual resided with the child in this state;
> (4) The individual resided in this state and provided prenatal expenses or support for the child;
> (5) The child resides in this state as a result of the acts or directives of the individual;
> (6) The individual engaged in sexual intercourse in this state and the child may have been conceived by that act of intercourse;
> (7) The individual asserted parentage in the putative father registry maintained in this state by the department of children's services; or
> (8) There is any other basis consistent with the constitutions of this state and the United States for the exercise of personal jurisdiction.

The only arguable and argued basis for personal jurisdiction herein is subsection (2) of the statute, which simply reiterates the general rule that personal jurisdiction may be waived by a defendant. *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994) (citing *Brown v. Brown*, 155 Tenn. 530, 296 S. W. 356 (Tenn. 1927)). An individual waives an objection to lack of personal jurisdiction by any of the actions listed in Tenn. Code Ann. § 36-5-2201(2).

---

[17]Under the UIFSA, the registered order does not become the order of the registering court. Instead, there remains only one order in existence at any time. The registered order may be enforced regardless of whether it could be modified. Tenn. Code Ann. § 36-5-2603 cmt.

Initially, Father chose to make a limited appearance solely for the purpose of contesting jurisdiction herein and, by that limited appearance, did not waive personal jurisdiction. Thus, at the time of the trial court's ruling on October 18, 2001, entered October 19, the trial court correctly concluded that it lacked personal jurisdiction over Father because "the pleadings establish no basis of contact with the State."

However, Father made an unlimited appearance by filing on October 18, 2001 an "Emergency Motion to Recognize Foreign Custody Order," wherein Father asked the trial court to recognize and enforce the July 2001 order from the Louisiana court so that Father could gain physical custody of G.B. That emergency motion was denied. Then, on November 14, 2001, Father filed a Request for Registration and Enforcement of Foreign Custody Decree in which he again sought affirmative relief. By these filings, Father submitted himself to the jurisdiction of the Tennessee trial court and waived any objection to lack of personal jurisdiction.

Father asserts, however, that his filings came after the trial court had determined it had not personal jurisdiction over him. While that is accurate, that order was not final at the time of Father's filings. Mother filed her notice of appeal in the case on November 14, the same day that Father filed his petition. However, the trial court still had before it Mother's timely filed Motion to Alter or Amend, which the decided by order entered December 17, 2001. In that order, the trial court, at Mother's request, certified that its October 18 order was final, pursuant to Tenn. R. Civ. P. 54.02, as to all issues except the registration of the earlier orders of the Louisiana court. Thus, the court's decision that it had no personal jurisdiction over Father was final on December 17, 2001, making Mother's November 14 notice of appeal premature. Pursuant to Tenn. R. App. P. 4(d), a prematurely filed notice of appeal will be treated as filed after the entry of the judgment from which the appeal is taken. Consequently, Mother's notice of appeal was effective December 17, 2001.

The trial court had subject matter jurisdiction of this action until the notice of appeal was effective. Thus, that court had subject matter jurisdiction when Father filed the pleadings whereby he submitted himself to the personal jurisdiction of the court. However, Mother never brought to the trial court's attention the fact that Father had submitted himself to the court's jurisdiction and never raised the issue of the court's newly gained jurisdiction over Father. She raises that issue for the first time on appeal. Consequently, Mother has waived any irregularity in the trial court's failure to re-determine the issue of personal jurisdiction over Father after the trial court's October 18 ruling entered October 19, 2001. *Norton v. McCaskill*, 12 S.W.3d 789, 795 (Tenn. 2000); *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983) (noting, "It has long been the general rule that questions not raised in the trial court will not be entertained on appeal . . . ."). Because we have already determined that the trial court correctly decided that it had no personal jurisdiction over Father in its October 19, 2001 order, we affirm that decision by the trial court.

With regard to Mother's request that the trial court determine the parentage of A.M.B. and establish support, there is an additional subject matter jurisdiction issue because there was already such a proceeding pending in Louisiana at the time of Mother's request. Father had filed a petition

to disavow paternity in Louisiana on September 16, 1997. Mother had filed an answer to that petition on October 9, 1997. Blood tests had been ordered, but Mother had never appeared with A.M.B. for this testing.

Tenn. Code Ann. § 36-5-2801 authorizes courts of this state to serve as either an initiating or responding tribunal in a proceeding brought under the Uniform Interstate Family Support Act to determine parentage. As the official comments explain, this article authorizes a "pure parentage" action in the interstate context, but, more commonly, such a action also seeks to establish a support order under the Act. Mother's petition herein requested a determination of parentage and the establishment of an order for the support of A.M.B.

Tenn. Code Ann. § 36-5-2204 governs simultaneous proceedings to establish a support order. It provides that a court of this state may exercise jurisdiction to establish a support order if the petition filed in this state after a pleading is filed in another state only if: (1) this state's proceeding is filed prior to the expiration of the time allowed to respond to the pleading filed in the other state; and (2) the contesting party challenges the other state's jurisdiction. The facts herein do not establish subject matter jurisdiction in this state. The proceeding filed herein by Mother was not within the time for her to answer Father's petition in Louisiana; she answered that petition; she did not contest the jurisdiction of the Louisiana court. In fact, she was living in Louisiana at that time and for two years thereafter.

Accordingly, we hold that the trial court correctly determined that it lacked personal jurisdiction to enforce the support order entered previously by the Louisiana court and also hold that the trial court lacked subject matter jurisdiction over the request to establish parentage of and support for A.M.B.

### III. Registration and Enforcement of a Foreign Custody Decree

After the trial court ruled on Mother's requests for relief, reserving the question of registration of the earlier Louisiana order establishing support, Father filed a petition with the Tennessee trial court pursuant to Tenn. Code Ann. § 36-6-229 seeking the registration and enforcement of the child custody order from Louisiana entered July 19, 2001, awarding custody of G.B. to Father.

In that petition, Father provided his current address and alleged: (1) that he is a citizen and resident of Louisiana entitled to custody of G.B.; (2) that Mother is a citizen and resident of Tennessee and has had custody of G.B.; and (3) that Tenn. Code Ann. § 36-6-229(b)(1) provides that Tennessee should cause the Louisiana custody determination to be filed in Tennessee as a foreign judgment. The trial court considered the petition and agreed with Father, but chose to stay enforcement of the Louisiana judgment granting Father custody of G.B. pending the disposition of Mother's Louisiana appeal of that decision. After her appeal was dismissed by the Louisiana court, the Tennessee trial court registered and enforced the Louisiana order.

Tenn. Code Ann. § 36-6-227 governs recognition and enforcement of foreign decrees. It states:

(a) A court of this state shall recognize and enforce a child-custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with this part, or the determination was made under factual circumstances meeting the jurisdictional standards of this part and the determination has not been modified in accordance with this part.

(b) A court of this state may utilize any remedy available under other law of this state to enforce a child-custody determination made by a court of another state. The remedies provided in this part are cumulative and do not affect the availability of other remedies to enforce a child-custody determination.

The official comments to Tenn. Code Ann. § 36-6-227 instruct us that this section of the UCCJEA is based on and retains the language of the UCCJA regarding the basic duty to enforce. We have previously determined that Louisiana had continuing exclusive jurisdiction over the custody matters in regards to G.B.; consequently, the Louisiana court had jurisdiction to modify its own decree which first gave custody of G.B. to Mother as a result of the divorce in 1997.

The issues raised in this appeal are not addressed to jurisdictional deficiencies. Instead, Mother alleges that Father's petition failed to meet certain procedural requirements. In order to register a child custody determination issued by a court of another state, with or without a request for enforcement, a petitioner must submit:

(1) A letter or other document requesting registration;
(2) Two (2) copies, including one (1) certified copy, of the determination sought to be registered, and a statement under penalty of perjury that to the best of the knowledge and belief of the person seeking registration the order has not been modified; and . . . .

Tenn. Code Ann. § 36-6-229.

Once the foreign decree is registered, a petitioner can seek enforcement of the foreign order by using the procedure established in Tenn. Code Ann. § 36-6-232, which states, in pertinent part:

(a) A petition under this part must be verified. Certified copies of all orders sought to be enforced and of any order confirming registration must be attached to the petition. A copy of a certified copy of an order may be attached instead of the original.
(b) A petition for enforcement of a child-custody determination must state:
(1) Whether the court that issued the determination identified the jurisdictional basis it relied upon in exercising jurisdiction and, if so, what the basis was;

-18-

(2) Whether the determination for which enforcement is sought has been vacated, stayed, or modified by a court whose decision must be enforced under this part and, if so, identify the court, the case number, and the nature of the proceeding; (3) Whether any proceeding has been commenced that could affect the current proceeding, including proceedings relating to domestic violence, protective orders, termination of parental rights, and adoptions and, if so, identify the court, the case number, and the nature of the proceeding; (4) The present physical address of the child and the respondent, if known; (5) Whether relief in addition to the immediate physical custody of the child and attorney's fees is sought, including a request for assistance from law enforcement officials and, if so, the relief sought; and (6) If the child custody determination has been registered and confirmed under § 36-6-229, the date and place of registration.

Father filed a petition seeking registration and enforcement and sent a certified copy of the Louisiana decree in accordance with Tenn. Code Ann. § 36-6-229. However, the petition filed by Father contained a statement under penalty of perjury signed by his attorney stating that "to the best of his knowledge and belief the Louisiana decree had not been modified, vacated, or stayed by a court having jurisdiction to do so." Tenn. Code Ann. § 36-6-229 clearly requires the statement to be signed by the "person seeking registration." Mother argues that the certification by the attorney rather than by Father did not comply with the statutory requirements.

The trial court recognized that Father's petition "fails to comply with the [Tenn. Code Ann. § 36-6-229] provision," but by the time of the court's ruling, it had received a certified copy of the entire Louisiana trial court record. Therefore, the trial court stated that, based on that record it was "confident of the status of the continued Louisiana litigation" and granted Father's petition to register and enforce the final decree of Louisiana awarding Father custody of G.B.

We agree with the trial court. By the time the court registered the final Louisiana order and enforced it, the court was fully aware of the entire proceeding in Louisiana. The purpose of the requirements for the petition is to provide the trial court with as much information as possible. Tenn. Code Ann. § 36-6-232 cmt. The trial court herein had all the information available by the time it made its final ruling on Father's petition.

On November 14, 2001, Father filed a petition to register and enforce a Louisiana order which had been in effect since July 19, 2001. Meanwhile, on November 9, 2001, Mother had filed in Louisiana a motion to appeal the July 19 order, and that motion was granted on January 9, 2002. The Tennessee trial court was informed of these actions, and stayed enforcement of the July 19 order pending resolution of Mother's appeal. Consequently, Mother was not prejudiced in any way by the failure of Father's petition to mention her request for permission to appeal.

Mother also argues that Father's petition was deficient in that it did not state the Louisiana court's basis for jurisdiction. The trial court had determined, and this court has affirmed that determination, that the Louisiana court had continuing, exclusive jurisdiction with regard to

modification of its earlier custody order. Therefore, we find no basis for reversal simply because the petition may have failed to state whether the Louisiana court's order set forth its jurisdictional basis and the nature of that basis. Subject matter jurisdiction over the custody order had been one of the primary issues litigated in this action below.

## IV.  Conclusion

For the foregoing reasons, we affirm the decision of the trial court dismissing Mother's petition in its entirety and granting Father's petition to register and enforce the July 2001 custody decree of the Louisiana trial court. Costs of this appeal are taxed to the appellant, Christina Cliburn, for which execution may issue, if necessary.

_____
PATRICIA J. COTTRELL, JUDGE